## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| YAIR GRANADOS JOAQUIN, et al.; | § | |
| | § | |
| v. | § | A-15-CV-787-LY |
| | § | |
| THE COLISEUM INC. d/b/a EL COLISEO | § | |
| and the COLISEUM OF AUSTIN, et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
          UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant Alfredo Hinojosa, Arcababa, Inc. d/b/a OK Corral - Ft. Worth, Spangler Entertainment, Inc. d/b/a OK Corral - Dallas, El Volcan Social Club, Inc. d/b/a Far West-Dallas, Rodeo 2000 Social Club, Inc. d/b/a Far West - Tyler, and Old Town Ranchers, Inc. d/b/a/ Medusa's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 40); Plaintiffs' Response (Dkt. No. 43); and Defendants' Reply (Dkt. No. 47). Also before the Court are: Defendant MAC 23, Inc.'s Rule 12(b)(2), (3), and (6) Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 41); Plaintiffs' Response (Dkt. No. 44); and Defendant MAC 23, Inc.'s Reply (Dkt. No. 49). The District Court referred these Motions to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

## I.  FACTUAL BACKGROUND

Plaintiffs Yair Granados Joaquin, Jose Heriberto Escobedo Camargo, and Janet Herrera Rubio (Plaintiffs) bring suit against Alfredo Hinojosa, The Coliseum, Inc. d/b/a El Coliseo and The Coliseum of Austin,  Arcababa, Inc. d/b/a OK Corral - Ft. Worth, Spangler Entertainment, Inc. d/b/a

OK Corral - Dallas, El Volcan Social Club, Inc. d/b/a Far West - Dallas, Rodeo 2000 Social Club, Inc. d/b/a Far West - Tyler,  Old Town Ranchers, Inc. d/b/a/ Medusa's, and MAC 23, Inc. alleging unpaid minimum wages and misappropriation of tips. Plaintiffs, who were employed as bartenders and barbacks, bring a collective ("opt-in") action for minimum wage claims under the federal Fair Labor Standards Act. They also bring a class ("opt-out") action, under Federal Rule of Civil Procedure 23, for conversion, breach of contract, and quasi-contract claims under Texas common law, as well as for violation of the Texas Theft Liability Act. Plaintiffs originally filed this case in the County Court at Law of Travis County, Texas as Cause No. C-1-CV-15-006139. Defendants removed the case to federal court on the basis of federal question jurisdiction.

All Defendants, with the exception of the Coliseum, Inc. d/b/a El Coliseo and the Coliseum of Austin, move to dismiss the claims against them asserting that, applying the "economic realities" test, they were not the Plaintiffs' employers. Plaintiffs assert that all Defendants, while nominally separate companies, are so interrelated and their operations so integrated that they constitute a single joint employer, and are therefore jointly liable to Plaintiffs for unpaid wages and tips. Additionally, Defendant MAC 23 moves to dismiss for lack of personal jurisdiction, arguing that it is an Oklahoma company with no ties to Texas; or alternatively it moves to dismiss for lack of proper venue in Texas.

## II.  ANALYSIS

### A.    12(b)(6) Motion to Dismiss

#### 1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches*

*Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Under Rule 8(a)(2), plaintiffs are not required to include "detailed factual allegations," but at the same time "more than an unadorned, the-defendant-unlawfully-harmed-me accusation is needed." *Twombly*, 550 U.S. at 555 (citations and internal punctuation omitted).

### 2.    FLSA Standing

Defendants argue that Plaintiffs cannot establish standing to sue the non-Coliseum Defendants because each Plaintiff has failed to adequately plead that he or she was "employed" by the other Defendants. Therefore, Defendants argue, Plaintiffs cannot establish standing to bring suit against the non-Coliseum Defendants under the FLSA.

To establish standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). The requirement of standing is not lessened for an individual plaintiff where that plaintiff files a class action complaint. *See, e.g., Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981). The standing issue must be resolved before a class is certified. *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d

315, 319 (5th Cir. 2002). To demonstrate that they have standing, named plaintiffs in a class action must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 570 F. Supp. 2d 851, 856 (E.D. La. 2008). The standing requirement is no different in a collective action suit. A named plaintiff in a collective action adequately pleads standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him. *Lucas v. BMS Enterprises*, 2010 WL 2671305 (N.D. Tex. 2010).

### 3. "Employer" under the FLSA

The FLSA requires "employers" to pay their employees a minimum wage. 29 U.S.C. § 206(a). An "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Defendants assert that only the Coliseum admits to qualifying as Plaintiffs' "employer" as defined by the FLSA. Defendants assert that the Court must employ the "economic reality test" to determine the status of the other Defendants vis-a-vis the Plaintiffs. Defendants argue that, using this test, the named Plaintiffs have failed to plead facts substantiating any Defendant qualifies as an "employer" other than the Coliseum. Plaintiffs respond that the non-Coliseum Defendants qualify as "joint employers" or a "single employer" pursuant to the FLSA, and are thus jointly responsible for compliance with the FLSA.  29 U.S.C. § 203(d). Additionally, Plaintiffs argue that "Defendants were each their joint employers as a matter of economic reality, by virtue of common control, and under a single employer theory." Dkt. No. 43 at 5. Defendants dispute Plaintiffs' application of the joint employer theory, asserting Plaintiffs are applying it out of context and incorrectly. Thus, the Court must sort out which test is applicable in this instance.

### 4.    "Economic reality" test

The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship under the FLSA. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). The test originates in the Supreme Court's holding that "economic reality" should govern the determination of employer status under the FLSA. *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). The test directs that the court consider whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams*, 595 F.3d at 620. In cases where there may be more than one employer, courts "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Graves*, 909 F.2d at 1556. The absence of one factor is not necessarily dispositive, but the absence of all factors is fatal to the inquiry. *Id.* at 357.

### 5.    Plaintiffs' joint employment theory

Plaintiffs assert that the Defendants, while nominally separate companies, are so interrelated and their operations so integrated, that they constitute a single joint employer under the FLSA. Dkt. No. 36 at ¶ 21. Defendants argue that, although a court in an FLSA collective action may later determine whether defendants were joint employers, the named plaintiffs may not maintain such a cause of action on behalf of a class of potential opt-in plaintiffs against a defendant whom no named plaintiff can show was his employer. *Lucas,* 2010 WL 2671305 at *4-5. Defendants argue that Plaintiffs plead that all Plaintiffs worked for all Defendants without pleading any supporting facts. Defendants additionally argue that Plaintiffs confuse joint enterprise coverage under the FLSA with the separate requirement of an employment relationship with each Defendant based upon the

economic reality test. Plaintiffs respond that they have sufficiently alleged that all Defendants qualify as their "employer" under the joint employment theories of economic reality, the common control theory and the "horizontal joint employment theory." Dkt. No. 43 at p. 11. Whether a person or an entity is an "employer" under the statute is a question of law. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985); *but see Donovan v. Sabine Irrigation*, 695 F.2d 190, 194 (5th Cir. 1983) ( holding the issue of whether or not a party is a *joint employer* for the purposes of the Fair Labor Standards Act is a question of fact). However, a party must plead at least an employment relationship with each employer before the issue of joint employment may be determined. Plaintiffs first focus their arguments on Alejandro Hinojosa, asserting that they have adequately pled that Hinojosa qualifies as their joint employer. Second, Plaintiffs focus their arguments on why all Defendants qualify as their employer under the FLSA.

### 6. Hinojosa as joint employer

Plaintiffs argue that they have adequately pled that Alejandro Hinojosa qualified as their joint employer under the FLSA. In order "[t]o be bound by the requirements of the Fair Labor Standards Act, one must be an 'employer.' " *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C. §§ 206–07). As noted earlier, the FLSA defines "employer" to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has instructed that the FLSA's definition of "employer" is to be interpreted expansively. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). Thus, "[t]he term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work.'" *Lee*, 937 F.2d at 226 (quoting *Falk*, 414 U.S. at 195). While "merely being an officer or shareholder" will not subject an individual to FLSA liablity, "employer status may be appropriate where operational control coincides with one's position as a shareholder,

officer, or owner." *Gray v. Powers*, 673 F.3d 352, 355–56 (5th Cir. 2012). The Fifth Circuit uses the

"economic reality" test to evaluate whether a person possesses such operational control with respect

to the employment relationship. *Id.* at 354, 357. "While each element need not be present in every

case," the person must have control over at least certain aspects of the employment relationship. *Id.*

at 357 ("While the Fifth Circuit 'has on several occasions found employment status even though the

defendant-employer had no control over certain aspects of the relationship,' it does not follow that

someone who does not control any aspect of the employment relationship is an employer.").

With regard to Hinojosa, Plaintiffs have pled that:

25.     Defendant Hinojosa controls the operations of the corporate Defendants and has had
        the authority to act on behalf of each corporation vis-à-vis its employees throughout
        the relevant period of this litigation.

26.     Defendant Hinojosa determined the Plaintiffs' and Class Members' rate and
        method of payment and controlled their working conditions.

Dkt. No. 36.  Plaintiffs argue that applying the economic reality test to Hinojosa, he qualifies as a

"joint employer."   They cite to various cases in which courts have found corporate officers

individually liable for a company's FLSA violations. *See e.g., Grim Hotel Co.*, 747 F.2d at 972;

*Sabine Irrigation*, 695 F.2d at 195; *Reich v. Circle C Inv.*, 998 F.2d 324, 329 (5th Cir. 1993). In *Grim*,

the court found that an individual who was president of five corporations, each owning one hotel,

qualified as an "employer" under the FLSA. Applying the economic reality test, the court based its

determination on the following facts:

> Alberding began and controlled the hotel corporations. He has held their purse-strings
> and guided their policies. It was only he who could authorize compliance with the Fair
> Labor Standards Act. He personally selected the manager of every hotel. He traveled
> to Texas to inspect the hotels and to solve major problems. The hotels were part of the
> Alberding family business. In short, the hotels, speaking pragmatically, were
> Alberding's and functioned for the profit of his family. . . .Alberding was the "top
> man."

747 F.2d at 972. In *Sabine Irrigation*, another case involving Mr. Alberding, the court find that he qualified as an "employer" because he "independently exercised control over the work situation" through "[his control[] [of] many matters traditionally handled by an employer in relation to an employee (such as payroll, insurance, and income tax matters)". 695 F.2d at 195. In *Reich v. Circle C. Investments, Inc.*, the Fifth Circuit held that dancers at a club were not self-employed; rather, the court held that the dancers were employees of both the club and an individual who did not have an ownership interest in the club. *Id.* at 327, 329. The court concluded that the individual was an employer because, despite working under a consulting contract that excluded responsibility for personnel matters, the individual "exercised control over the work situation" by hiring and supervising dancers, giving specific instructions to the club's employees (including requiring the dancers to dance to his favorite songs), removing money from the business' safes,  acting as the employees' supervisor, signing pay checks, and circulating inter-office memoranda. *Id.* at 329.

In this case, Plaintiffs fail to plead facts relevant to most of the economic reality factors adopted by the Fifth Circuit. While Plaintiffs plead that "Hinojosa controls the operations of the corporate Defendants and has had the authority to act on behalf of each corporation vis-à-vis its employees" and that Hinojosa "determined the Plaintiffs' and Class Members' rate and method of payment and controlled their working conditions," these are conclusory allegations. Plaintiffs explicitly plead that they are employees of The Coliseum. No facts are pled regarding whether Hinojosa possessed the power to hire and fire the Plaintiffs, maintained employment records, set their schedules, or defined the terms of their work.  Further, no facts are pled to support the assertion that Hinojosa controlled the conditions of their employment. Nor do Plaintiffs even plead what Hinojosa's

role was with regard to the various Defendant corporations, including The Coliseum.  Without any facts on these points, the complaint does not state a claim against Hinojosa as an employer.[1]

### 7.     Affiliated entities as joint employers

Defendants also assert that Plaintiffs have failed to plead facts demonstrating that the corporate defendants other than The Coliseum were each Plaintiffs "employer," and their theory of "joint employment" is insufficient to establish standing. Plaintiffs plead that Defendants qualify as their joint employers as a matter of economic reality, by virtue of common control, and under a single employer theory. The relevant portion of the Second Amended Complaint states:

> 17.    The Defendants' night clubs have generally sold the same goods and provided the same services as each other, operated in a similar manner, booked the same and similar performing artists, and have advertised collectively during the relevant period of this lawsuit based on their integrated business operations, including marketing themselves jointly on their official websites. The Defendants' night clubs also have shared business practices with respect to employment, including implementation of the rate and method of payment applicable to all Plaintiffs and Class Members and the misappropriation of their tips yielding the violations described herein.

> 21.    The corporate Defendants, while nominally separate companies, are so interrelated and their operations so integrated, that they constitute a single joint employer to which the Plaintiffs and Class Members provided labor.

---

[1]*See, e.g., Harris v. Ideal Discount Market*, No. CIV.A. 13-4914, 2014 WL 2533406 (E.D. La. June 4, 2014) (granting motion to dismiss individual defendant storeowners because the amended complaint contained no factual details outlining the Individual's Defendant's specific roles at any of the involved stores and/or the nature of their interaction with each of the 55 employees and because it contained only a "boilerplate recitation" of elements of the economic reality test); *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (concluding that the president and principal shareholder was not an employer because "[t]o be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."); *Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc.*, No. 11–2777, 2012 WL 5302418, at *5 (E.D. La. Oct.25, 2012) (finding that individual defendant qualified as employer where plaintiff, even though reciting the elements of the economic realities test, also provided sufficient facts of individual defendant's involvement in hiring decisions, response to plaintiff's complaints, and enforcement of plaintiff's work schedule).

22.     The corporate Defendants have been commonly controlled throughout the relevant period. The corporate entities have overlapping directors and officers, and their business operations, including policies and practices defining the terms and conditions of their employees' work, are jointly managed.

23.     At all times relevant to this action, Defendants have jointly acted, directly or indirectly, in the interest of employers with respect to Plaintiffs and Class Members.

Dkt. No. 36.

What Plaintiffs are arguing, a theory they call the "single integrated enterprise" or "single employer" theory, is in fact not recognized as being applicable to determining who the "employer" is for FLSA cases.  It is more accurately described as a "single" or "common enterprise" theory, and in the FLSA context it only applies to the question of whether a named defendant is sufficiently large to be governed by the Act.  As a judge in the Northern District of Texas explained,

> In their response brief, plaintiffs point to another possible basis for standing, arguing that the Blackmon Mooring defendants along with the other named defendants constitute an enterprise. This is also insufficient. Although the Blackmon Mooring defendants may be a part of a common enterprise with plaintiffs' employer or employers, FLSA liability is predicated only on an employee-employer relationship, not on defendants' involvement in a common enterprise. *See Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. . . . Liability is based on the existence of an employer-employee relationship."). The FLSA enterprise concept is only applicable to determine whether the defendant is large enough to be subject to the FLSA. *Id.* Mere corporate relationship is also insufficient to give standing to sue under the FLSA. *See Pineiro Diaz v. Adchem Pharma Operations*, 2005 WL 2397489, at *10 (D. P.R. Sept.28, 2005) (imposing Rule 11 sanction where plaintiff had filed FLSA collective action complaint against other subsidiaries of plaintiff's employer's corporate parent). The FLSA concept of "enterprise" does not abrogate the need for the plaintiff to show that he suffered injury at the hands of each individual defendant, even if the defendants are related corporations.

2010 WL 2671305 at *4 n.8. Thus this theory is inapplicable to the Court's inquiry as to whether Plaintiffs have adequately pled a theory of joint employment.

Next, Plaintiffs assert that this Court should expand the economic reality test to include factors beyond those articulated in *Gray*. However, Plaintiffs argue that even applying the *Gray* factors, Defendants all qualify as Plaintiffs' employers as an economic reality. In this case, the relevant facts set forth on this issue in Plaintiffs' Second Amended Complaint are as follows:

24.    Defendants interchange and share the services of many of their bartenders (including Plaintiffs and Class Members) to their common benefit, jointly set their schedules, and share supervisory authority over them. For example, when Plaintiff Yair Granados Joaquin was hired to work as a bartender at The Coliseum of Austin, Defendants sent him to work at their OK Corral - Fort Worth location as part of his training. Defendants would also frequently supplement the regular staff at one of their night clubs with bartenders who worked at others of their night clubs when an especially large crowd was anticipated due to ticket sales for popular artists.

Dkt. No. 36. Plaintiffs argue that this pleading, alleging shared scheduling and supervision, is sufficient to allege common control of the employees sufficient to establish standing for all Defendants. However, Plaintiffs cite no binding authority supporting the theory that if all Defendants are part of a single integrated enterprise, they meet the requirements of *Gray*. Plaintiffs point the Court to *Chambers v. Groome Transp. Ala.*, 2014 WL 7151138 (M.D. Ala. Dec. 12, 2014), for the proposition that the plaintiffs' allegations of multiple joint employers' shared control over policies affecting business operations was sufficient to meet the pleadings requirement of "employer" at this stage of the litigation.  However, *Chambers* addresses whether a complaint sufficiently pled liability on the part of individuals—not corporate affiliates—because the individuals were "corporate officer[s] . . . who had and ha[ve] operational control over the policies that determined the day-to-day functions of [the corporation] and its compensation of employees [and have] direct responsibility for the pay policies of employees, such as [ ] Plaintiffs."  *Chambers v. Groome* thus has no bearing on the Plaintiffs' joint employer theory regarding the corporate Defendants.  Plaintiffs' factual

allegations fail to establish that the non-Coliseum Defendants qualify as "employers" under the economic reality test.

Alternately, Plaintiffs plead that all Defendants qualify as their "employer" under the horizontal joint employment theory. Under the FLSA, a single employee may be jointly employed by multiple employers. 29 C.F.R. § 791.2(a).[2]  The regulations state that:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b)(1–3). On January 20, 2016, the United States Department of Labor, Wage and Hour Division, issued an Administrator's Interpretation of the requirements of joint employment

---

[2]29 C.F.R. § 791.2(a) states:

A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. . . . [I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.

under the FLSA. The AI states that "horizontal joint employment exists where the employee has employment relationships with two or more employers and the employers are sufficiently associated or related with respect to the employee such that they jointly employ the employee. The analysis focuses on the relationship of the employers to each other."

Both the CFR and the AI recognize that "a single worker may be 'an employee to two or more employers at the same time.'" *Id.* (citing 29 C.F.R. 791.2(a); *Baystate Alt. Staffing, Inc., v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)). However, that is not what Plaintiffs in this case plead. Plaintiffs fail to plead that they were simultaneously employed by two or more employers; instead, they plead that they were simultaneously employed by all the Defendants, because of the Defendants' relationships with each other. In a "joint employer" relationship, there is no single integrated enterprise. Put another way, a conclusion that employers are "joint" assumes that they are separate legal entities. *See Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985).

Plaintiffs have skipped to the portion of the inquiry focusing on the employers' relationship to each other, without pleading actual employment by the various Defendants sufficient to qualify them as "joint employers." At most, Plaintiffs have pled that Granados received training at the OK Corral - Fort Worth location. Other than this statement regarding Grandos' training, the Second Amended Complaint states "the named Plaintiffs were employed as bartenders or barbacks *at the Coliseum of Austin*." Dkt. No. 36 at ¶ 18 (emphasis added). And with regard to Granados, Plaintiffs fail to plead who paid him during his stint at OK Corral - Fort Worth, who directed his activities, and whether anyone affiliated with OK Corral - Fort Worth had the ability to fire him. All the pleadings indicate is that Granados' sole relationship with the OK Corral - Fort Worth was that he spent a week there training. At best, this might potentially support an assertion that OK Corral - Fort Worth was

13

his employer or co-employer for that one week, but it would not support the more general assertion that OK Corral - Fort Worth continued to be his employer once the training ended.  Additionally, Plaintiffs fail to allege that Camargo and Rubio worked anywhere but The Coliseum in Austin. The complaint fails to plead facts on an individualized basis for each plaintiff, with information about what entities issued their paychecks, where (if anywhere) each plaintiff worked in addition to The Coliseum, what hours the plaintiffs worked, how their hours were calculated, in what capacity the plaintiffs worked, what entities maintained employment records, and what entities possessed the power to fire and hire the employees.

Plaintiffs must plead separate employment, separate payment from the employers, and separate injuries regarding their wages and tips by each employer in order to establish standing against the non-Coliseum Defendants pursuant to the FLSA. Where a complaint seeks to hold more than one employer liable under the FLSA, at least some facts of the employment relationship must be set forth in order to make out a facially plausible claim of multiple employer liability under the FLSA. *Kaminski v. BWW Sugar Land Partners*, No. CIV.A. H-10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010). Plaintiffs in this case fail to plead any facts regarding their individual employment relationships with each Defendant employer sufficient to withstand a motion to dismiss. *See Lopez v. Acme Am. Envtl. Co.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *4 (S.D. N.Y. Dec. 6, 2012) ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees."). Plaintiffs allegations entirely leave out the relationship that Plaintiffs, as employees, had to non-Coliseum Defendants besides the one location at which Plaintiffs actually worked.

The Court finds that Plaintiffs have failed to adequately plead facts establishing that all Defendants qualify as each plaintiff's "employer" under the economic reality test. Specifically, Plaintiffs have not provided "factual allegations as to how the events that gave rise to this lawsuit were allocated [among] the [various] defendants ... [or] how his employment was handled generally." *See Escobedo v. Metal Protective Coating Professionals, Inc.*, 2013 WL 6504675, at *2 (S.D. Tex. Dec.11, 2013). The Court finds that the claims against all non-Coliseum Defendants are properly dismissed.

**B.    Amendment**

When a complaint fails to state a claim, a court should generally give plaintiff an opportunity to amend under Rule 15(a) before dismissing the action with prejudice.  "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 675-76 (2d Cir. 1991)).  The Court cannot state that amendment would be futile in this case if Plaintiffs can plead, in good faith, allegations relating to the employer status of each of the non-Coliseum Defendants.  And while Plaintiffs amended their complaint previously, they did so in response to a motion to dismiss filed by the one defendant *not* at issue here, The Coliseum, Inc.  In the motion seeking leave to file that amended complaint, Plaintiffs stated:

> Plaintiffs' proposed Second Amended Complaint . . . responds to Defendant's concerns [stated in The Coliseum, Inc.'s Motion to Dismiss] by whittling down the claims asserted (namely, by eliminating the six causes of action previously pleaded under Oklahoma common law) and providing additional factual enhancement out of an abundance of caution to further buttress the plausibility of their claims for relief.

15

*See* Dkt. No. 28.  Thus, it does not appear that the Plaintiffs have previously amended in response to the non-Coliseum Defendants' arguments regarding the deficiency of the pleadings on the question of joint employment.  As a result, the Court recommends that the district judge permit Plaintiffs an opportunity to replead to cure the deficiencies noted above.

**C.     Defendant MAC 23, Inc.'s Motion to Dismiss**

Defendant MAC 23, Inc. seeks dismissal on the same grounds as the other defendants, as well as on the additional grounds that the Court lacks personal jurisdiction over it and that the claims against it are filed in the improper venue. Given the Court's determination that Plaintiffs have failed to plead sufficient facts to demonstrate that MAC 23 was the Plaintiffs' "employer" under the FLSA, and its further recommendation that Plaintiffs be given an opportunity to replead to attempt to cure that defect, the Court recommends that this portion of MAC 23's motion be dismissed without prejudice to MAC 23 reurging these issues in the event Plaintiffs replead their claims and include MAC 23 as a defendant.

## III.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** the Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 40), and **GRANT IN PART** Defendant MAC 23, Inc.'s Rule 12(b)(6) Motion to Dismiss (Dkt. No. 41), and **DISMISS** the claims against Alfredo Hinojosa, Arcababa, Inc. d/b/a OK Corral - Ft. Worth, Spangler Entertainment, Inc. d/b/a OK Corral - Dallas, El Volcan Social Club, Inc. d/b/a Far West - Dallas, Rodeo 2000 Social Club, Inc. d/b/a Far West -Tyler, Old Town Ranchers, Inc. d/b/a/ Medusa's Rule, and MAC 23 d/b/a OK Corral - Oklahoma City, but the undersigned **FURTHER RECOMMENDS** that the District Court **PERMIT** Plaintiffs to file an amended complaint to plead sufficient facts to support a claim

that these Defendants were Plaintiffs' "employers" for purposes of the FLSA. Finally, the undersigned **RECOMMENDS** that the District Court **DISMISS WITHOUT PREJUDICE** Defendant MAC 23, Inc.'s Rule 12(b)(2) and (3) Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 41).[3]

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

[3]Plaintiffs have also pled various state law causes of action, and Defendants also request dismissal of those claims under Rule 12(b)(6) for failure to state a claim. A district court may decline to exercise supplemental jurisdiction over ancillary state law claims if it has dismissed all of the federal claims in a case. "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Thus, the Court RECOMMENDS that the district judge dismiss without prejudice all of the state claims against all defendants except The Coliseum, Inc., without prejudice to Plaintiffs repleading those claims against any defendant should Plaintiffs amend their pleadings in response to this recommendation.

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of July, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE