IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| YAIR GRANADOS JOAQUIN, et al.; § | |
| § | |
| v.  § | A-15-CV-787-LY |
| § | |
| THE COLISEUM INC. d/b/a  § | |
| EL COLISEO, et al.  § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Alfredo Hinojosa's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (Dkt. No. 54); Plaintiffs' Response (Dkt. No. 64); and Defendant Alfredo Hinojosa's Reply (Dkt. No. 69). The District Court referred the Motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

## I.  FACTUAL BACKGROUND

Plaintiffs Yair Granados Joaquin, Jose Heriberto Escobedo Camargo, and Janet Herrera Rubio (Plaintiffs) bring suit against Alfredo Hinojosa, The Coliseum, Inc. d/b/a El Coliseo and The Coliseum of Austin alleging unpaid minimum wages and misappropriation of tips. Plaintiffs, who were employed as bartenders and barbacks, bring a collective ("opt-in") action for minimum wage claims under the federal Fair Labor Standards Act.  They also bring class ("opt-out") claims under Federal Rule of Civil Procedure 23, for conversion, breach of contract, and quasi-contract under Texas common law, as well as for violation of the Texas Theft Liability Act.  Plaintiffs originally

filed this case in Travis County Court at Law. Defendants removed the case to federal court based on federal question jurisdiction.

After removal from state court, Plaintiffs filed their First Amended Complaint (Dkt. No. 17), which added six other establishments that Plaintiffs claimed were related to The Coliseum. Defendants filed a 12(b)(6) Motion to Dismiss. Dkt. No. 24. The Court denied that motion without prejudice (Dkt. No. 35), when Plaintiffs filed their Second Amended Complaint (Dkt. No. 36). Defendant Hinojosa and the other establishments then filed a 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint. Dkt. No. 40. The undersigned recommended that the District Court grant Defendants' Motion and dismiss Plaintiffs' claims against all the non-Coliseum Defendants without prejudice, but give Plaintiffs the opportunity to amend their Complaint. Dkt. No. 51. The Court adopted that recommendation (Dkt. No. 52), and Plaintiffs chose not to replead their claims against the non-Coliseum defendants, though they did keep Hinojosa as a defendant (Dkt. No. 53). The only claim against Hinojosa in the Third Amended Complaint is failure to pay minimum wage pursuant to 29 U.S.C. § 216(b). Hinojosa has now filed a 12(b)(6) motion, contending that Plaintiffs do not have standing to sue him because he was not their "employer."

## II.  ANALYSIS

### A.     12(b)(6) Motion Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Under Rule 8(a)(2), plaintiffs are not required to include "detailed factual allegations," but at the same time "more than an unadorned, the-defendant-unlawfully-harmed-me accusation is needed." *Twombly*, 550 U.S. at 555 (citations and internal punctuation omitted).

    **B.**    **FLSA Standing**

Hinojosa argues that Plaintiffs cannot establish standing to sue him because the Plaintiffs has failed to adequately plead that each were "employed" by him. To establish standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). The requirement of standing is not lessened for an individual plaintiff where that plaintiff files a class action complaint. *See, e.g., Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981). The standing issue must be resolved before a class is certified. *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). To demonstrate that they have standing, named plaintiffs in a class action suit must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 570 F. Supp. 2d 851, 856 (E.D. La. 2008). The standing requirement is no different in a collective action suit. A named plaintiff in a collective action

adequately pleads standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him. *Lucas v. BMS Enterprises*, 2010 WL 2671305 (N.D. Tex. 2010).

### C.     "Employer" under the FLSA

The FLSA requires "employers" to pay their employees a minimum wage. 29 U.S.C. § 206(a). "Employer" is defined by the FLSA to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *Lee v. Coahoma Cnty.*, 937 F.2d 220, 226 (5th Cir. 1991). The FLSA definition of "employer" is to be interpreted expansively. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). Thus, "[t]he term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work.'" *Lee*, 937 F.2d at 226 (quoting *Falk*, 414 U.S. at 195). While "merely being an officer or shareholder" will not subject an individual to FLSA liablity, "employer status may be appropriate where operational control coincides with one's position as a shareholder, officer, or owner." *Gray v. Powers*, 673 F.3d 352, 355–56 (5th Cir. 2012). The Fifth Circuit uses the "economic reality" test to evaluate whether a person possesses such operational control with respect to the employment relationship. *Id.* at 354, 357. The test originated with the Supreme Court's holding that "economic reality" should govern the determination of employer status under the FLSA. *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). The economic reality test directs a court to consider whether the alleged employer:

> (1)     possessed the power to hire and fire the employees,
> (2)     supervised and controlled employee work schedules or conditions of employment,
> (3)     determined the rate and method of payment, and
> (4)     maintained employment records.

*Williams*, 595 F.3d at 620.   In cases where there may be more than one employer, courts "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy

the four part test." *Graves*, 909 F.2d at 1556. "While each element need not be present in every case," the person must have control over at least some aspects of the employment relationship. *Gray*, 673 F.3d at 357 ("While the Fifth Circuit 'has on several occasions found employment status even though the defendant-employer had no control over certain aspects of the relationship,' it does not follow that someone who does not control any aspect of the employment relationship is an employer.").

Whether a person or an entity is an "employer" under the statute is a question of law. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985); *but see Donovan v. Sabine Irrigation*, 695 F.2d 190, 194 (5th Cir. 1983) (holding the issue of whether or not a party is a *joint employer* for the purposes of the Fair Labor Standards Act is a question of fact). Plaintiffs argue that they have adequately pled that Alejandro Hinojosa qualified as their joint employer, along with The Coliseum. With regard to Hinojosa, in the Third Amended Complaint, Plaintiffs plead:

12. Defendants employed bartenders and barbacks in addition to the Plaintiffs at The Coliseum (the "Class Members").

13. At all times relevant to this action, Defendants have been employers of the Plaintiffs and Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all times relevant to this action, Defendants have jointly acted, directly or indirectly, in the interest of employers with respect to Plaintiffs and Class Members.

15. In addition to being President and part owner of The Coliseum Inc., Defendant Hinojosa controls the operations of The Coliseum and has had the authority to act on behalf of it vis-à-vis its employees throughout the relevant period of this litigation.

16. Hinojosa possessed and exercised the power to hire and fire employees at The Coliseum. Hinojosa personally hired and fired some employees of The Coliseum, while subordinate managers under his supervision hired and fired other employees at the Coliseum.

17. Hinojosa personally supervised and controlled employees' working conditions. Hinojosa visited The Coliseum regularly for several hours at a time, especially when The Coliseum hosted larger events, to monitor and supervise its employees. When Hinojosa was physically present at The Coliseum, he watched its employees' and personally issued directions about how to perform their work. For example, Hinojosa monitored customer service and gave instructions to his local, subordinate managers, Jose "Pepe" Tovar and Miguel Angel Valenzuela, to convey to the bartenders and waitstaff. Hinojosa also surveilled the crowd throughout the night and told security guard employees where to move and how to maintain vigilance and respond to incidents.

18. Hinojosa controlled employees' work schedules and the manner and method in which they were paid. For example, Hinojosa personally ordered The Coliseum's management to have the Plaintiffs and Class Members punched out of the time clock, requiring them to work off the clock without pay while they cleaned the venue after closing time, which is one of the wage violations that are the basis of this lawsuit.

19. Hinojosa also controlled and participated in the maintenance of employment records, evidenced by the fact that he signed the plaintiffs' and class members' paychecks.

(Dkt. No. 53).

Plaintiffs argue that applying the economic reality test to Hinojosa, these allegations are sufficient to support their contention he was a "joint employer." They cite to various cases in which courts have found corporate officers individually liable for a company's FLSA violations. *See e.g., Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *Sabine Irrigation*, 695 F.2d at 195; *Reich v. Circle C Inv.*, 998 F.2d 324, 329 (5th Cir. 1993). In *Grim*, the court found that an individual who was president of five corporations, each owning one hotel, qualified as an "employer" under the FLSA. Applying the economic reality test, the court based its determination on the following facts:

> Alberding began and controlled the hotel corporations. He has held their purse-strings and guided their policies. It was only he who could authorize compliance with the Fair Labor Standards Act. He personally selected the manager of every hotel. He traveled to Texas to inspect the hotels and to solve major problems. The hotels were part of the Alberding family business. In short, the hotels, speaking pragmatically, were

>Alberding's and functioned for the profit of his family. . . . Alberding was the "top man."

747 F.2d at 972. In *Sabine Irrigation*, another case involving Mr. Albering, the court found that he qualified as an "employer" because he "independently exercised control over the work situation" through "[his control[] [of] many matters traditionally handled by an employer in relation to an employee (such as payroll, insurance, and income tax matters)." *Sabine*, 695 F.2d at 195. In *Reich*, the Fifth Circuit held that dancers at a club were not self-employed; rather, they were employees of both the club and an individual who did not have an ownership interest in the club. *Id.* at 327, 329. The court concluded that the individual was an employer because, despite working with the club under a consulting contract that excluded responsibility for personnel matters, the individual "exercised control over the work situation" by hiring and supervising dancers, giving specific instructions to the club's employees (including requiring the dancers to dance to his favorite songs), removing money from the business's safes, acting as the employees' supervisor, signing pay checks, and circulating inter-office memoranda. *Id.* at 329.

In this case, Plaintiffs plead most of the economic reality factors adopted by the Fifth Circuit. Plaintiffs plead that "Hinojosa controls the operations of the corporate Defendants and has had the authority to act on behalf of each corporation vis-à-vis its employees." More importantly, Plaintiffs plead that Hinojosa had the power to hire and fire Coliseum employees, and that he actually did so. Plaintiffs also plead that Hinojosa visited The Coliseum and, while there, monitored and supervised the employees. Plaintiffs have pled that Hinojosa was involved in the day-to-day operation of The Coliseum. Additionally, Plaintiffs plead that Hinojosa ordered The Coliseum's management to have employees punch off the clock while still working, and signed employees' checks. Unlike in their prior complaint, Plaintiffs explicitly plead that Hinojosa possessed the power to hire and fire the

employees and maintained employment records. Additionally, Plaintiffs have pled that Hinojosa directly controlled their working conditions. This is sufficient to state a claim that Hinojosa was Plaintiffs' "employer." *See, e.g., Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) ("[t]o be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."); *Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc.*, 2012 WL 5302418, at *5 (E.D. La. Oct.25, 2012) (finding that individual defendant qualified as employer where plaintiff, even though reciting the elements of the economic realities test, also provided *sufficient facts of individual defendant's involvement* in hiring decisions, response to plaintiff's complaints, and enforcement of plaintiff's work schedule). The facts alleged in the Third Amended Complaint are sufficient to establish Plaintiffs each have standing to bring an individual claim against Hinojosa.

### III.  RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the District Court **DENY** Alfredo Hinojosa's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (Dkt. No. 54).

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 19th day of December, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE